NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| OMAYRA GOMEZ [DEL VALLE], | |
| Plaintiff, | Civil No. 12-7930 (RMB) |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**APPEARANCES**:

Adrienne Freya Jarvis
Adrienne Freya Jarvis, P.C.
800 N. Kings Highway, Suite 304
Cherry Hill, NJ 08034
          Attorney for Plaintiff

Elizabeth Rothstein
United States Attorney's Office
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
          Attorney for Defendant

**BUMB**, UNITED STATES DISTRICT JUDGE:


Plaintiff Omayra Gomez Del Valle (the "Plaintiff") seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of the Acting Commissioner of Social Security (the "Commissioner") denying her application for Social Security

Supplemental Income ("SSI").  For the reasons set forth below, the Court will vacate the decision of the ALJ and remand.

## I.   **Background**

a) Procedural History

Plaintiff applied for SSI on March 30, 2009, alleging a disability onset date of June 3, 2008.  (Administrative Record "R." 94).  Plaintiff's claims were denied on September 18, 2009, and again upon reconsideration on February 5, 2010. (R. 19).  Plaintiff then filed a request for a hearing before an Administrative Law Judge ("ALJ"), which was held before the Honorable Frederick Timm, on January 11, 2011.  (R. 32).  Plaintiff appeared, testified at the hearing with the assistance of an interpreter, and was represented by counsel.  (R. 19).

The ALJ issued his determination on March 17, 2011, finding that Plaintiff had not been disabled since the date of filing and denying benefits.  (R. 13-27).  Thereafter, Plaintiff filed a Request for Review of Hearing Decision with the Appeals Counsel on March 17, 2011.  (R. 1).  Plaintiff submitted additional medical records (R. 465-703), which the Appeals Counsel made part of the record. (R. 6-7).  The Appeals Counsel made no further findings and adopted the ALJ's decision on

November 2, 2012.  (R. 1).  That decision is the final decision
of the Commissioner of Social Security.

    b) Hearing Testimony

    Plaintiff, who came to the United States from Puerto Rico
in 2007 or 2008 (R. 60), speaks very little English and required
the use of an interpreter at the ALJ hearing.  The interpreter
switched between answering in the first and third person.  (See,
e.g., R. 62-64), and the transcript is often difficult to
follow.

    Three witnesses testified during the ALJ hearing.  The
first witness, Plaintiff's sister Marisol Torres, testified
that Plaintiff has "always" heard voices, explaining that
Plaintiff has been hearing voices and "seeing somebody[1]" since
she was very young.  (R. 52).  Plaintiff sometimes ask Ms.
Torres if she hears voices, and when Ms. Torres indicates that
she does not, Plaintiff starts to cry.  (R. 52-53).  Ms. Torres
testified that Plaintiff started therapy at Nueva Vida when she
came to the United States from Puerto Rico in 2007 or 2008.  (R.
at 60).  Plaintiff's psychiatrist at Nueva Vida is Dr. Monte.
(R. 61, 390-92, 437-39).

_____

    [1] Plaintiff's brief has a footnote here saying "[i]f read in
context this means having visual hallucinations."

With respect to Plaintiff's employment history, Ms. Torres testified that Plaintiff worked as a cashier at Kmart in Puerto Rico when she was 15 or 16 years old.  (R. 54, 60).  Later, in 2008, Plaintiff reported earnings of $11,000.00, earned through knitting children's clothing that Ms. Torres would then sell.  (R. 55, 56-59).  Ms. Torres indicated she encouraged Plaintiff to knit to keep her mind occupied and that Plaintiff knitted for approximately one hour a day in the afternoons during this time.  (R. 74-76).  Ms. Torres supervised Plaintiff and did not think Plaintiff could complete the work by herself because Plaintiff would "freak out if it[] [was] not right" and because Ms. Torres had to reteach her or correct her knitting every day.  (R. 74-75).  Ms. Torres testified that Plaintiff eventually gave up the business because "it was too much for her."  (R. 57-58).

Ms. Torres testified that her involvement with Plaintiff on a daily basis is "almost on everything," including helping with food shopping, cooking, doing laundry, and caring for Plaintiff's children.  (R. 42-43, 49-50).  Ms. Torres testified that Plaintiff sometimes gets frustrated helping her children with their homework because "[i]t's very difficult for her . . . to think on her own, to actually explain . . . . [and] she seems to not have the patience to be sitting with the kids."  (R. 50).  Ms. Torres testified that Plaintiff has difficulty food shopping because most of the time she shops she panics from being around

so many people.  (R. 44, 46-47).  During these panic attacks, Plaintiff sometimes cries, pulls her hair, bites her nails, and scratches herself.  (R. 45).

Ms. Torres does not let Plaintiff watch soap operas or the news as these programs tend to upset Plaintiff.  (R. 54-55). Instead, Plaintiff watches cartoons with the children. (R. 54). Ms. Torres testified that she is Plaintiff's only friend, and, even so, Plaintiff sometimes wants to punch or hit Ms. Torres. (R. at 54-55).

Ms. Torres testified that she and Plaintiff's aunt take Plaintiff to her clinic appointments and that Ms. Torres waits for Plaintiff during these appointments in case Plaintiff gets nervous being around people.  (R. 48).  Ms. Torres also always makes sure Plaintiff takes her medication.  (R. 49-50).

After Ms. Torres' testimony was complete, the Plaintiff testified.  At the beginning of Plaintiff's testimony, counsel asked whether Plaintiff was scratching herself and whether she needed a break.  (R. 63-64).  The interpreter told Plaintiff she did not have to be scared and the parties agreed to take a break.  (R. 64).  Upon return, the interpreter indicated she thought Plaintiff was nervous because she was scratching herself.  (R. 63-64).

Plaintiff, through her interpreter, testified that she sometimes hears a man's voice and that the voice scares her.

(R. 64).  When she is home alone, Plaintiff locks the house, which has three locks, and draws the curtains.  (R. 65). Plaintiff testified that she sometimes gets sick and vomits from nervousness and that she bites her hands from anger.  (R. 66-67).

Plaintiff confirmed that Ms. Torres is her only friend, helped Plaintiff knit the children's clothing, and continues to help Plaintiff care for her children and cook.  (R. at 62-63, 65-66, 72-73).  Plaintiff testified that she has not made children's clothes for a long time and that she threw away her knitting tools after becoming angry.  (R. 68).  On one occasion, a customer was unhappy with a dress Plaintiff made, and Plaintiff "didn't know what to do and she just exploded herself . . . and quit doing it."  (R. 69).  Plaintiff testified that she discussed her knitting business with her counselor but not her psychiatrist.  (R. 71).

Plaintiff stated that could not work as a cashier now because she is too nervous around people; she only worked as a cashier at Kmart because her parents needed money and, even then, only worked for three hours a day for a very short time because she was still in school.  (R. 70, 72).  Further, Plaintiff testified that her mental problems have worsened since she worked at Kmart.  (R. 72).  Plaintiff has not applied for a job since being in New Jersey.  (R. 71).

During the hearing, the ALJ consulted with Chris Martin, a Vocational Expert ("VE"), to determine the types of work Plaintiff could perform. (R. 76). Based on the hypotheticals presented by the ALJ, the VE testified that the Plaintiff could perform in the field of knit goods[2] (R. 80, 87), or as a housekeeping cleaner (R. 83, 85), a sedentary assembler (R. 85), or a locker room attendant (R. 85). The parties concluded the cross-examination of the VE and apparently intended to reconvene at a later date. (R. 93).

c) The ALJ's Decision

Applying the requisite five-step analysis,[3] the ALJ concluded that Plaintiff met the insured status requirements of the Social Security Act and had not engaged in substantial gainful activity since March 30, 2009. (R. 21). The ALJ found that Plaintiff has the severe impairments of varicose veins and superficial thrombophlebitis of the left lower extremity, and a major depressive disorder. (R. 21). In making the "severe impairment" findings, the ALJ relied on records related to Plaintiff's conditions, including:

- The report of David Bogacki, Ph.D, who conducted a consultative mental status examination on Plaintiff on September 15, 2009 at the request of the Social Security Administration (Exhibit 1F);

---

[2] This is a light work, semi-skilled position with an SVP of 3.
[3] Described on pages 15-16 infra.

- The report of Joseph Wieliczko, Psy.D. from September 18, 2009 (Exhibits 3F & 4F);
- Treatment notes from Nueva Vida Behavioral Health Center of New Jersey from August 8, 2008, when Plaintiff was evaluated by Lyda Monte, M.D., and from November 2009 and January 21, 2010 (Exhibit (5F, 12F);
- Treatment notes from Hispanic Family Center for the period from September 2008 through April 2009 (Exhibit 16F);
- Treatment notes from Ramon Acosta, M.D., including notes from July 22, 2008, June 19, 2009, and December 8, 2009 (Exhibit 9F);
- Treatment notes from Babak Abai, M.D. from October 28, 2008, March 5, 2009, and March 18, 2010 (Exhibit 15F & 9F);
- The treatment notes of Mitra Assadi, M.D., from October 14, 2010 (Exhibit 9F);
- The report of Lyda Monte, M.D. from December 8, 2010 (Exhibit 13F); and
- The opinion of the State Agency medical consultants (R. 24).

Based on the above, the ALJ determined that Plaintiff's impairments did not meet the criteria for listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24).

Next, the ALJ determined Plaintiff has residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b); "however, due to mental impairment, she is limited to simple, routine tasks, and to tasks that are goal-oriented rather than production-paced and to be performed in a low-traffic environment." (R. 24). The ALJ concluded that Plaintiff:

- Demonstrates "a mild degree of limitation in the activities of daily living area functioning";
- Demonstrates "a moderate degree of limitation in the social functioning area of functioning";

- Demonstrates "a moderate degree of limitations in the concentration, persistence and pace area of functioning"; and
- "[H]as no episodes of decomposition."

(R. 26).  The ALJ predicated his findings on the following medical determinations:

- Dr. Bogacki's report that the Plaintiff indicated she could care for and manage her family; that Plaintiff was oriented to time, place, and person; that Plaintiff's speech was logical, coherent, and goal-directed; and the results of cognitive screening (R. 25 citing Exhibit 1F);
- The Social Security Field Office interviewer's observation that Plaintiff "had no physical or cognitive limitations during her face-to-face interview[]" (R. 25 citing Exhibit 1E);
- Dr. Bogacki and Dr. Monte's estimate that Plaintiff's GAF[4] was 60 (R. 25 citing Exhibits 1F & 5F)
- Dr. Wieliczko's finding that Plaintiff's "activities of daily living did not indicate significant or marked limitations" and that Plaintiff could perform simple work related activities (R. 25 citing Exhibit 4F);
- The Hispanic Family Center's treatment notes from September 9, 2008 through April 16, 2009 documenting an improvement in Plaintiff's symptoms (R. 25 citing Exhibit 16F);
- Nueva Vida Behavioral Health's treatment notes indicating Plaintiff "had good results with medication and treatment"  (R. 25 citing Exhibit 12F);
- Dr. Assadi's report that Plaintiff's migraine headaches were alleviated by over the counter analgesics (R. 26 citing Exhibit 9F); and
- Doppler studies performed on Plaintiff's lower extremities in March 2010, after Plaintiff underwent endovenous laser ablation for her varicose veins, with results "within normal limits." (R. 26)

---

[4] GAF refers to a "Global Assessment of Functioning."

The ALJ also discussed the December 8, 2010 report of Dr. Monte. In that report, Dr. Monte found that the Plaintiff displayed inter alia, "marked cognitive deficits and. . . had frequent episodes of depression, mood changes, loss of self-control, social anxiety, and hallucinations," which resulted in "'extreme' limitations in carrying out simple instructions, making judgments on simple work-related decisions, understanding, remembering and carrying out complex instructions; make[ing] judgments on complex work-related decisions; interacting appropriately with the public, supervisors, and co-workers and responding appropriately to work situations and to changes in routine work setting." (R. 23 citing Exhibit 13F).

The ALJ assigned "little weight to Dr. Monte's assessment" that Plaintiff has extreme limitations, finding that the assessment is "not consistent with the [Plaintiff's] treatment records, her lack of inpatient treatment, normal childhood, and her reported activities of daily living." (R. 25). To support his finding, the ALJ points to both Plaintiff and her sister's testimony regarding Plaintiff's self-employment, which, he stated, required the exercise of significant initiative and activity level. (R. 25). Moreover, the ALJ indicated that the record fails to suggest Plaintiff:

- has experienced repeated episodes of decomposition of extended duration;
- has a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or changes in her environment would be predicted to cause her to decompensate; and/or
- exhibits a current history of one or more years of inability to function outside of a highly supportive living arrangement, with an indication of continued need for such arrangement.

(R. 26).

In making these findings, the ALJ stated that the Plaintiff "has some subjective limitations, but not of the intensity, frequency, or duration alleged." (R. 25). The ALJ continued, stating that "the [Plaintiff's] alleged limitations appeared exaggerated compared to the objective medical evidence of record[] and are inconsistent with the much higher level of daily activities indicated." (R. 25).

Next, the ALJ concluded that the Plaintiff had no past relevant work and thus he could not determine whether Plaintiff could perform past relevant work. (R. 26). Then, considering Plaintiff's age, education, work experience, and the RFC as determined, the ALJ found that there were jobs in significant numbers in the national economy that Plaintiff could perform. (R. 26). In making this finding, the ALJ relied on the VE, who had been asked to determine whether jobs exist in the national economy for an individual with the Plaintiff's age, education, work experience, and RFC. (R. 27). The VE found that Plaintiff

would be able to perform jobs as a cleaner, an assembler, and a locker room attendant. (R. 27).

As a result of the above findings, the ALJ ultimately determined that the Plaintiff is not disabled as defined by the Social Security Act. (R. 27).


## II.   **Standard of Review**

A reviewing court must uphold the Commissioner of Social Security's factual findings if they are supported by "substantial evidence," even if the court would have decided the inquiry differently. 42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Where the evidence is susceptible to "more than one rational interpretation, the Commissioner's conclusion must be upheld." Ahearn v. Comm'r, 165 F. App'x 212, 215 (3d Cir. 2006) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

If faced with conflicting evidence, however, the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). Stated differently,

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotations omitted); see also Guerrero v. Comm'r, No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19, 2006) ("The [administrative law judge's] responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it."), aff'd, 249 F. App'x 289 (3d Cir. 2007).

While the Commissioner's decision need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections," Burnett v. Comm'r, 220 F.3d 112, 122 (3d Cir. 2000). See also Fargnoli, 247 F.3d at 42 ("Although we do not expect the [administrative law judge] to make

reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the reviewing court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r, 181 F.3d 429, 431 (3d Cir. 1999)).

### "Disability" Defined

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of

whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," [he] is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform [his] past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to [his] past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume [his] former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts
to the Commissioner, who must demonstrate the claimant
is capable of performing other available work in order
to deny a claim of disability. 20 C.F.R.
§ 404.1520(f). The ALJ must show there are other jobs
existing in significant numbers in the national
economy which the claimant can perform, consistent
with [his] medical impairments, age, education, past
work experience, and residual functional capacity. The
ALJ must analyze the cumulative effect of all the
claimant's impairments in determining whether [he] is
capable of performing work and is not disabled. See 20
C.F.R. § 404.1523. The ALJ will often seek the
assistance of a vocational expert at this fifth step.
See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir.
1984).

## III.  Analysis

   a) The ALJ's Assessment of the Medical Opinions of Record[5]

Plaintiff's two arguments - 1) that the ALJ erred in giving

great weight to the opinions of a non-examining state agency

psychologist, Dr. Wieliczko, and an agency retained

psychologist, Dr. Bogacki, both of whom did not have Plaintiff's

treatment records; and 2) that the ALJ erred in giving little

weight to Plaintiff's treating psychiatrist, Dr. Monte - will be

addressed simultaneously as those issues, and the law related to

their resolution, are interrelated.

---

[5] This Court construes Plaintiff's arguments regarding the
ALJ's determinations with respect to her treating physician as a
challenge to the ALJ's step four finding of Residual Functional
Capacity.  See Johnson v. Comm'r, 529 F. 3d 198, 201 (3d Cir.
2008)(construing arguments regarding treating physician's
opinions as a challenge to the ALJ's step four finding).

The crux of Plaintiff's arguments stems from the ALJ's finding that he assigned "great weight" to the findings of Drs. Bogacki and Wieliczki, (R. 22) and "little weight to Dr. Monte's assessment as it is not consistent with the claimant's treatment records, her lack of inpatient treatment, normal childhood, and her reported activities of daily living, which indicate a much higher level of functioning (see Exhibits 3F, 5F, 12F & 16F)." (R. 23-24). Plaintiff argues that Dr. Wielizko's review does not constitute substantial evidence as it is merely a series of check boxes with no written report and that the ALJ's review of medical evidence "dismisses several years of mental health treatment by picking out some 'good days' and citing them." Pl.'s Br. at 35. Moreover, the Plaintiff argues that the findings of Drs. Bogacki and Wieliczki are not supported by substantial evidence as neither doctor had Plaintiff's relevant mental health treatment records in their possession before making their assessment.

The Plaintiff also avers that the ALJ erred in supporting his conclusions by stating that Plaintiff had a "normal childhood" when she only alleged an onset of her illness as of 2008, and that the Commissioner seeks to improperly bolster the ALJ's findings after the fact with record evidence not cited in his opinion.

In response, the Commissioner argues that Drs. Bogacki and Wieliczki had no treating source evidence to review through no fault of their own, as the Commissioner made multiple attempts to obtain the records but was unsuccessful. Moreover, the Commissioner contends that Dr. Monte's assessment in 2010 that Plaintiff had extreme limitations is "inconsistent with. . . her own treatment records," (Comm'r Br. at 12), and the ALJ's reliance on Plaintiff's "normal childhood," even if incorrect, is harmless as there were other grounds for his determination.

SSR 96-2p states, in relevant part: "If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted." That said, an ALJ must consider every medical opinion and decide how much weight to give the opinion. 20 C.F.R. § 404.1527(c). An ALJ must accord "[t]reating physicians' reports . . . great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (internal citations omitted).

The ALJ must also consider the findings and opinions of state agency medical consultants and other sources consulted in connection with ALJ hearings. 20 C.F.R. § 404.1527(e)(2)(i). If non-examining medical source opinions are supported by medical

evidence in the record, they may constitute substantial evidence and override a treating physician's opinion. Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995), aff'd per curiam, 85 F.3d 611 (3d Cir. 1996). "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason . . . . The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer, 186 F.3d at 429 (internal citations omitted). An ALJ errs by failing to address evidence in direct conflict with his findings. Landeta v. Comm'r, 191 F. App'x. 105, 110 (3d Cir. 2006).

This Court agrees that the ALJ has failed to adequately address evidence in the record that conflicts with his findings and, therefore, remand is proper.[6] In his opinion, the ALJ bolstered his determination that Dr. Monte's conclusions as to Plaintiff's limitations were unfounded by citing Exhibit 12F – Plaintiff's treatment records from Nueva Vida from 8/8/08-10/22/10. In doing so, however, the ALJ failed to resolve or even address certain conflicts and sections of that record

---

[6] This Court also finds troubling the fact that the ALJ stated that the hearing would be reconvened but it was never restarted. (R. 93). Similarly troubling is the ALJ's explicit finding that the Plaintiff can communicate in English (R. 26 at ¶7), when, in fact, the Plaintiff needed a translator at the hearing, a translator in order to be examined by Dr. Bogacki, and when there is explicit and unrefuted evidence in the record that the claimant speaks very little English. (See R. 208).

supporting Dr. Monte's findings.  For example, the ALJ states
that the "[t]reatment notes from Nueva Vida Behavioral Health. .
. indicate the claimant had good results with medication and
treatment," (R. 25), and cites those treatment notes as grounds
for assigning Dr. Monte's findings little weight.  He appears to
ignore, however, sections of that very record supporting Dr.
Monte's findings – e.g., notes from February 2010, indicating
that Plaintiff "does not have normal decision-making
capabilities" was "overwhelmed" "anxious" and "showed poor
concentration."  (R. 414-15).

    Moreover, he provides incomplete citations to other
portions of the record where a full citation would be less
supportive of his conclusion.  For example, the ALJ states that
"[o]n April 16, 2009, the claimant reported that she was doing
well (Exhibit 16F)." (R. 25).  A full review of record 16F
reveals, however, that the complete statement in the treatment
note from the Hispanic Family Center is that the claimant is
"doing well on meds."  (R. 458 emphasis added).  Doing well
overall and doing well on medication can mean two very different
things – e.g., the "meds" are not making the Plaintiff feel
negative side-effects, etc.  As such, this Court cannot find
that the ALJ's finding is supported by substantial evidence, and
this Court will remand for resolution of this conflicting
probative evidence.  See Fargnoli, 247 F.3d at 42 ("Where there

is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided.").

Moreover, this Court agrees that the ALJ's heavy reliance on Dr. Wieliczki as substantial evidence is problematic as it is merely a form report with check boxes only and no writing whatsoever.  See Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). The Plaintiff is also correct that the Commissioner seeks to improperly bolster the ALJ's determination with records not cited in his opinion.  For example, the Commissioner seeks to rely on the findings of Dr. Joseph Bencivenne contained in Exhibits 6F and 7F in support of the ALJ's giving great weight to the findings of Drs. Bogacki and Wieliczko.  This Court, however, cannot read the findings of Dr. Bencivenne into the ALJ's opinion.  See Fargnoli, 247 F.3d at 43, n.7 (rejecting the District Court's attempt to rectify ALJ's error by analyzing records not mentioned by the ALJ).

Finally, even if Drs. Bogacki and Wieliczko "rightly" did not have the exhibits in front of them before completing their respective evaluations (because those records were not produced by Plaintiff), the ALJ did have those exhibits when rendering

his decision.  As such, it was the ALJ's duty to examine the entire record before him and address the evidence that directly conflicts with the findings of Drs. Bogacki and Wieliczko. See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)("[W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.").

The ALJ should re-visit these issues on remand and more clearly state his reasoning for discounting the opinion of Dr. Monte, if that is again his finding in light of his examination of all relevant evidence.  See Williams v. Comm'r, 2013 U.S. Dist. LEXIS 118525, at *40 (D.N.J. Aug. 21, 2013)(finding that the ALJ erred by failing to discuss all medical evidence that supported the decision of claimant's treating physician).

b) The Testimony of the Lay Witnesses

Plaintiff also argues that the ALJ failed to properly assess the credibility of Ms. Torres' hearing testimony.  In response, the Commissioner admits that the ALJ did not explicitly state that Ms. Torres was not credible, (Comm'r Br. at 17), but that the failure to do so is not problematic as Ms. Torres' testimony is cumulative and not outcome determinative.

"Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." Fargnoli, 247 F.3d at 43. It is the responsibility of the ALJ to weigh the evidence and make determinations on contradicting evidence. Rodriguez-Pagan v. Comm'r Soc. Sec., No. 10-4273, 2011 U.S. Dist. LEXIS 105425, at *45-46 (D.N.J. Sept. 16, 2011).

This Court agrees that the ALJ's failure to assess the credibility of Ms. Torres' testimony at the hearing warrants remand as her testimony is consistent with limitations outlined by Plaintiff and Dr. Monte and contrary to the ALJ's findings as supported by Drs. Bogacki and Wieliczko. For example, Ms. Torres testified at length about the Plaintiff's inability to care for herself: for example she stated that she assists Plaintiff on a daily basis with "almost on everything," including helping with food shopping, cooking, doing laundry, and caring for Plaintiff's children. (R. 42-43, 49-50). Yet, the ALJ's opinion finds that "the [Plaintiff's] alleged limitations appeared exaggerated compared to the objective medical evidence of record; and are inconsistent with the much higher level of daily activities indicated" (R. 25); he proffers no discussion of his consideration of, let alone rejection of as not credible, Ms. Torres' testimony regarding her sister's extensive limitations. Thus, remand is warranted. See Cotter,

642 F.2d at 705 ("[W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.").

IV.  **Conclusion**

For the reasons stated above, this Court will vacate the decision of the ALJ and remand.  An accompanying Order will issue this date.

                                  s/Renée Marie Bumb
                                  RENÉE MARIE BUMB
                                  United States District Judge

Dated February 10, 2014